[No. F051709. Fifth Dist. Dec. 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD JAMES CARROLL, Defendant and Appellant.

504

COUNSEL

Cynthia A. Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Susan Rankin Bunting and Lewis Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ARDAIZ, P. J.—Ronald James Carroll appeals from an order extending his commitment to the State Department of Mental Health (DMH) as a sexually violent predator (SVP), pursuant to the Sexually Violent Predators Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).[1] In this opinion, we address his claim that sections 6604 and 6604.1, as amended effective September 20, 2006, to provide for an indeterminate term of commitment as opposed to the two-year extensions to which Carroll previously was subject, could not properly be applied to him; hence, his recommitment must be reduced to a two-year term. For the reasons that follow, we conclude Carroll was properly committed for an indeterminate term and, accordingly, we affirm.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

## PROCEDURAL HISTORY

Carroll was convicted of rape in 1970 and forcible oral copulation in 1978. He was first committed to the DMH as an SVP in May 2000. Two-year extensions followed, and the instant petition to extend his commitment was filed on March 20, 2006. In pertinent part, the petition alleged that Carroll continued to be an SVP, and so his commitment should be extended for two years pursuant to section 6604.

At the time the present petition was filed, former section 6604 provided, in pertinent part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement . . . , and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article . . . ." Former subdivision (a) of section 6604.1 provided that the initial two-year term of commitment was to commence on the date upon which the court issued the order of commitment, and that "[f]or any subsequent extended commitments, the term of commitment shall be for two years commencing from the date of the termination of the previous commitment." Former subdivision (b) of section 6604.1 set out who was to evaluate the person, and also which statutory provisions applied to extended commitment evaluations and proceedings.

Effective September 20, 2006, these and other statutes were amended by Senate Bill No. 1128 (2005–2006 Reg. Sess.) (Stats. 2006, ch. 337, §§ 55–56; hereafter Senate Bill 1128). Section 6604 thereafter provided, in pertinent part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement . . . ." Subdivision (a) of section 6604.1 provided: "The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section." Subdivision (b) of section 6604.1 contained no express reference to extended commitments, but instead designated which statutory provisions applied to evaluations performed in the event the DMH had reason to believe the committed person was no longer an SVP, and to all commitment proceedings.

Trial on the instant petition took place on November 7, 2006. In his trial brief filed that same day, the prosecutor noted that section 6604 now provided for commitment for an indeterminate term. At the outset of trial, he requested that the court strike the language in the petition that referred to two years.

When asked if he had any objection, defense counsel replied, "I'll submit it to the Court, Your Honor." The court then ruled that, in light of the law as it then existed, the commitment would be for an indeterminate term if the petition were found to be true. Following a court trial, Carroll again was found to be an SVP and was recommitted to the DMH for an indeterminate term.

## DISCUSSION

Carroll raises several challenges to the trial court's extension of his commitment for an indeterminate term. We address each in turn.[2]

## I

### TRIAL COURT'S AUTHORITY TO EXTEND COMMITMENT

Carroll contends that Senate Bill 1128's amendments to sections 6604 and 6604.1 left intact the procedures to be utilized for an initial commitment, but, by omitting any express provision for the filing of a petition or proceedings to *extend* a commitment, rendered the trial court without authority to extend Carroll's existing commitment term. Carroll says the history of Senate Bill 1128 and legislative intent to create what he terms harsher penalties for those committed under the SVPA render unpersuasive an argument that the trial court thus lacked authority to proceed with the recommitment proceedings at all, thereby entitling Carroll to unconditional release, but argues that the law in effect at the time the petition was filed should control, and so the trial court was authorized to recommit him only for a two-year, not an indeterminate,

---

[2] Carroll also claims the commitment order must be reversed because of problems he perceives with the amendment to subdivision (d) of section 6605. Senate Bill 1128 added the following provision to that subdivision: "The committed person's failure to engage in treatment shall be considered evidence that his or her condition has not changed, for purposes of any court proceeding held pursuant to this section, and a jury shall be so instructed. Completion of treatment programs shall be a condition of release." Carroll argues that "failure to engage in treatment" is unconstitutionally vague and overbroad, and that the language creates an impermissible mandatory presumption that deprived him of his constitutional rights to due process and a fair trial. As respondent points out, however, section 6605, subdivision (d) does not apply to extension proceedings such as Carroll's, but instead to annual reviews of a committed person's mental status that may lead to unconditional release. (*People v. Cheek* (2001) 25 Cal.4th 894, 898 [108 Cal.Rptr.2d 181, 24 P.3d 1204].) In light of this fact, we decline to issue what would amount to an advisory opinion on the provision's constitutionality. (See *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 610–611 [37 L.Ed.2d 830, 93 S.Ct. 2908]; *People v. Roberts* (1992) 2 Cal.4th 271, 336, fn. 18 [6 Cal.Rptr.2d 276, 826 P.2d 274].)

term. Respondent contends Carroll was properly recommitted for an indeterminate term because Senate Bill 1128's amendments apply to all SVP commitments imposed after the effective date of that legislation.[3]

█ We agree with respondent. As explained in *People v. Munoz* (2005) 129 Cal.App.4th 421 [28 Cal.Rptr.3d 295], "an SVP extension hearing is not a review hearing. *It is not the mere continuation of an earlier proceeding . . . . An SVP extension hearing is a new and independent proceeding at which, with limited exceptions, the petitioner must prove the defendant meets the [SVP] criteria,* including that he or she has a currently diagnosed mental disorder that renders the person dangerous. [¶] The process necessary for initially declaring a prisoner an SVP is an involved and demanding one. . . . [¶] . . . [¶] These same demanding procedures, including new evaluations, preliminary review by the trial court, preliminary hearing and trial, must be complied with in extending an SVP commitment. [Citations.] [¶] This requirement for what is essentially *a new determination of SVP status . . .* arises from the logical and constitutional requirement that *any* SVP commitment be based on a currently diagnosed mental disorder which makes it likely the person will engage in sexually violent criminal behavior. This requirement of currency requires evaluations done near the time of the recommitment *and a new determination by a trier of fact that the defendant is an SVP.* [Citations.]" (*Id.* at pp. 429–430, italics omitted and added; see also *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1179–1180 [93 Cal.Rptr.2d 468].)

█ Since an SVP extension proceeding requires, essentially, that SVP status be determined anew, it follows that the provisions of sections 6604 and 6604.1, as amended by Senate Bill 1128, apply to all SVP commitment proceedings. This is so regardless of whether they expressly refer to extensions, and even though section 6604.1, subdivision (a) provides that the indeterminate term is to commence on the date the trial court issues the *initial* order of commitment pursuant to section 6604.

█ " 'When questions as to the applicability or interpretation of statutes are presented to this court, numerous cases have recognized that the controlling issue is the intent of the Legislature.' [Citations.]" (*People v. Jeffers*

---

[3] On November 7, 2006, the electorate approved Proposition 83, the initiative measure known as the Sexual Predator Punishment and Control Act: Jessica's Law. Insofar as is pertinent to this appeal, the measure amended various statutes as they existed prior to Senate Bill 1128. As amended by the measure, section 6604 now provides for an indeterminate term of commitment, while subdivision (a) of section 6604.1 provides that said term shall commence on the date upon which the court issues the initial order of commitment pursuant to section 6604, and subdivision (b) specifies which statutory provisions apply to evaluations performed for purposes of extended commitments, and which rights, requirements, and procedures apply to all commitment proceedings. These amendments took effect November 8, 2006, the day after the extension of Carroll's commitment. (Cal. Const., art. II, § 10, subd. (a).)

(1987) 43 Cal.3d 984, 993 [239 Cal.Rptr. 886, 741 P.2d 1127].) "In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ The overall purposes of the SVPA are to protect the public from a select group of extremely dangerous offenders and to provide treatment for those people. (*People v. Ward* (2002) 97 Cal.App.4th 631, 636 [118 Cal.Rptr.2d 599].) Senate Bill 1128 was aimed at preventing future victimization. (See Historical and Statutory Notes, 36E West's Ann. Gov. Code (2007 supp.) foll. § 68152, p. 104.) Carroll's interpretation runs contrary to the obvious intent of Senate Bill 1128's amendments to sections 6604 and 6604.1, which was to enhance, not restrict, confinement of persons determined to be SVP's. (*People v. Shields* (2007) 155 Cal.App.4th 559, 563 [65 Cal.Rptr.3d 922].) By changing SVP terms from two years to an indeterminate period of time, the Legislature unequivocally conveyed an intent to continue the confinement of persons adjudicated to be SVP's. (*Ibid.*) Even assuming Carroll's argument finds some support in the plain language of the statutes, it fails because it would result in absurd consequences the Legislature clearly did not intend, and statutory provisions may be added by implication when doing so is compelled by necessity and supported by solid evidence of the drafters' true intent. (*People v. Guzman* (2005) 35 Cal.4th 577, 587 [25 Cal.Rptr.3d 761, 107 P.3d 860]; *People v. Shields, supra,* 155 Cal.App.4th at p. 564.)

Based on the foregoing principles and the indisputable intent of the Legislature to continue the confinement of SVP's for an indeterminate term, we conclude the trial court was authorized to extend Carroll's commitment period beyond the two-year recommitment period in effect at the time the petition to extend Carroll's commitment was filed.

## II

## ADEQUACY OF NOTICE

Next, Carroll contends he was not provided constitutionally adequate due process because he was not informed until the date of trial that the state was

seeking an indeterminate commitment term. He points out that, as filed, the petition requested a two-year extension; although Senate Bill 1128 went into effect on September 20, 2006, the district attorney waited until the start of trial to seek to strike the language that referred to a two-year term. Respondent counters that Carroll waived this claim by failing to object and that, in any event, the statute itself afforded him notice of the change in the law.

■ An SVP proceeding is civil, not criminal, in nature. (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 988 [114 Cal.Rptr.2d 760].) Even so, "[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections. [Citation.]" (*People v. Otto* (2001) 26 Cal.4th 200, 209 [109 Cal.Rptr.2d 327, 26 P.3d 1061].)

" 'Once it is determined that due process applies, the question remains what process is due.' [Citation.]" (*People v. Otto, supra,* 26 Cal.4th at p. 210.) An involuntary commitment does not, of itself, trigger entitlement to the entire range of criminal procedural protections. (*Allen v. Illinois* (1986) 478 U.S. 364, 372 [92 L.Ed.2d 296, 106 S.Ct. 2988].) We need not determine, insofar as notice is concerned, exactly what due process rights someone in Carroll's position is afforded: Even assuming he was entitled to notice equivalent to what would be due in a criminal prosecution, his argument fails.

■ "Both the Sixth Amendment of the federal Constitution and the due process guarantees of the state and federal Constitutions require that a criminal defendant receive notice of the charges adequate to give a meaningful opportunity to defend against them. [Citations.] 'The "preeminent" due process principle is that one accused of a crime must be "informed of the nature and cause of the accusation." [Citation.] Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" (*People v. Seaton* (2001) 26 Cal.4th 598, 640–641 [110 Cal.Rptr.2d 441, 28 P.3d 175].) However, "[w]here a defendant fails to object at trial to the adequacy of the notice he receives, any such objection is deemed waived. [Citation.]" (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1056 [40 Cal.Rptr.3d 768]; accord, *People v. Seaton, supra,* 26 Cal.4th at p. 641.)

In the present case, Carroll was expressly given the opportunity to respond to the prosecutor's request to strike the language of the petition that referred to a two-year term, but he chose to submit the matter without objection or argument. Although he now says the trial court believed the law had changed and so any objection would have been futile, the record does not support this

view. Nor does it support Carroll's claim he was somehow deprived of the ability to challenge application of the Senate Bill 1128 amendments to him. Carroll's further suggestion—that the higher stakes occasioned by the possibility of an indeterminate term impacted his pretrial decisions, such as whether to waive his right to a jury trial or to present additional evidence in his defense—amounts to nothing more than speculation. Had the change in term adversely impacted Carroll's strategy or the presentation of his case, defense counsel could have said so. He did not, nor did he or Carroll express surprise at the change requested by the prosecutor. Under the circumstances, Carroll will not now be heard to complain. (See *People v. Carrasco, supra,* 137 Cal.App.4th at p. 1056.)

Moreover, Carroll's claim fails on the merits. Analogizing the petition to an information in a criminal prosecution, the amendment was not untimely as a matter of law (see Pen. Code, § 1009), nor was it improper simply because it potentially lengthened the term of commitment (see *People v. Valladoli* (1996) 13 Cal.4th 590, 606–608 [54 Cal.Rptr.2d 695, 918 P.2d 999]; *People v. Cargill* (1995) 38 Cal.App.4th 1551, 1555 [45 Cal.Rptr.2d 480]). The allegations against which Carroll needed to be prepared to defend—most importantly, that he continued to have a current diagnosable mental disorder, by reason of which he was likely to engage in sexually violent criminal behavior in the future—were unaffected by the amendment (see *People v. Suk* (1990) 220 Cal.App.3d 952, 960–961 [269 Cal.Rptr. 676]), and nothing suggests a continuance would have been unavailable to him had he needed one in order adequately to address the statutory change (cf. *People v. Valladoli, supra,* 13 Cal.4th at p. 607). Additionally, the petition at all times referred to the applicable code section; the statute itself gave notice of the increased commitment term, and Carroll was presumed to be aware of its existence. (See *Wright v. Superior Court* (1997) 15 Cal.4th 521, 532 [63 Cal.Rptr.2d 322, 936 P.2d 101]; *People v. Hagedorn* (2005) 127 Cal.App.4th 734, 748 [25 Cal.Rptr.3d 879]; *People v. Fitzgerald* (1997) 59 Cal.App.4th 932, 936–937 [69 Cal.Rptr.2d 453].)

## III

## RETROACTIVE APPLICATION OF
## INDETERMINATE TERM PROVISIONS

Last, Carroll contends that utilization of the indeterminate term provisions of Senate Bill 1128 in his case constituted an impermissible retroactive application of the statute, since the recommitment petition was filed before the effective date of the pertinent amendments to sections 6604

and 6604.1.[4] In our view, however, what matters is that the petition was amended, and trial and commitment occurred, after the indeterminate term provisions took effect.

 A new or amended statute is presumed to operate prospectively only, unless there is an express declaration or clear indication the Legislature (or the electorate) intended otherwise. (*People v. Ledesma* (2006) 39 Cal.4th 641, 664 [47 Cal.Rptr.3d 326, 140 P.3d 657]; *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434].) In order for a law to be retrospective, it must apply to events occurring before it was enacted. (*In re Ramirez* (1985) 39 Cal.3d 931, 936 [218 Cal.Rptr. 324, 705 P.2d 897].) Stated another way, "[a] statute has retrospective effect when it substantially changes the legal consequences of *past* events. [Citation.]" (*Western Security Bank v. Superior Court, supra*, 15 Cal.4th at p. 243, italics added.) "Thus, the critical question for determining retroactivity usually is whether the *last act or event necessary to trigger application of the statute* occurred before or after the statute's effective date. [Citations.] A law is not retroactive 'merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.' [Citation.]" (*People v. Grant* (1999) 20 Cal.4th 150, 157 [83 Cal.Rptr.2d 295, 973 P.2d 72], italics added.)

 Given the manner in which the SVPA was drafted, so that an extension hearing is a new and independent proceeding that essentially requires a new determination of SVP status (*People v. Munoz, supra*, 129 Cal.App.4th at pp. 429–430), application of Senate Bill 1128's provisions to Carroll did not change the legal consequences of *past* events or conduct. This is because "the trial on any petition for commitment *or recommitment* must focus on the person's *current* mental condition." (*Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1170 [21 Cal.Rptr.3d 21], italics added.) "[T]he statute clearly requires the trier of fact to find that an SVP is dangerous *at the time of commitment.* The statutory criteria are expressed in the present tense, indicating that each must exist *at the time the verdict is rendered.* In addition, a person cannot be adjudged an SVP unless he

---

[4] The California Supreme Court has held that, as originally enacted, the SVPA did not impose punishment or otherwise implicate ex post facto concerns. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1170–1179 [81 Cal.Rptr.2d 492, 969 P.2d 584]; cf. *Kansas v. Hendricks* (1997) 521 U.S. 346, 368–369, 370–371 [138 L.Ed.2d 501, 117 S.Ct. 2072].) Carroll does not contend the change from a two-year to an indeterminate term of commitment has rendered the statutory scheme so punitive, either in purpose or in effect, as to transform a civil remedy into a criminal penalty, thereby raising concerns under the ex post facto clauses of the federal and state Constitutions. (See *People v. Ansell* (2001) 25 Cal.4th 868, 885 [108 Cal.Rptr.2d 145, 24 P.3d 1174]; *People v. Wallace* (2004) 120 Cal.App.4th 867, 874–875 [16 Cal.Rptr.3d 152].)

'currently' suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior, and which 'makes' him dangerous and 'likely' to reoffend. [Citation.] [¶] By defining the qualifying mental disorder in this fashion, the statute makes clear that it is the *present inability* to control sexually violent behavior which gives rise to the likelihood that more crimes will occur, and which makes the SVP dangerous if not confined." (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1162, italics added; see also *Kansas v. Hendricks, supra,* 521 U.S. at p. 371 [Kansas act did not have retroactive effect where it permitted involuntary confinement based upon determination that person currently suffered from mental abnormality or personality disorder and was likely to pose future danger to public].)

In light of the foregoing, the significant point with respect to retroactivity is not the filing of the petition, but trial and adjudication under the SVPA. (*Garcetti v. Superior Court* (1999) 76 Cal.App.4th 685, 694 [90 Cal.Rptr.2d 581, 90 Cal.Rptr.2d 587].)[5] The conduct or event (for want of a better term) to which the SVPA attaches legal consequences is the person's mental condition at the time of adjudication, not at the time the extension petition is filed. In Carroll's case, he was subject to recommitment for an indeterminate term because of the status of his mental condition after Senate Bill 1128's amendments became effective.[6] Accordingly, those amendments applied only to "events" occurring after their enactment and so were not retrospectively applied. (See *People v. Grant, supra,* 20 Cal.4th at pp. 157–158; *In re Ramirez, supra,* 39 Cal.3d at pp. 936–937; cf. *Tapia v. Superior Court, supra,* 53 Cal.3d at p. 288 [in criminal prosecutions, retroactivity is determined, insofar as criminal conduct or punishment is concerned, based on when offense was committed]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206 [246 Cal.Rptr. 629, 753 P.2d 585] [in civil cases involving, for instance, change in measure or kind of damages available, retroactivity is determined based on when cause of action arose].)

In concluding that application to Carroll of the indeterminate term provisions did not constitute impermissible retrospective application of the Senate Bill 1128 amendments, we emphasize that this is not a situation in which Carroll's two-year term of commitment was deemed to be indeterminate

---

[5] As originally enacted, the SVPA defined "sexually violent predator" as someone who, inter alia, had been convicted of a sexually violent offense for which he or she received a determinate sentence. The *Garcetti* court held that conviction of a sexually violent offense resulting in an indeterminate sentence could constitute a predicate conviction under the SVPA, even if the petition for commitment was filed prior to the statutory amendment that permitted a conviction to qualify as a sexually violent offense even if the offender did not receive a determinate sentence therefor. (*Garcetti v. Superior Court, supra,* 76 Cal.App.4th at pp. 687–689, 694.)

[6] In this regard, Carroll's prior convictions constituted evidence in support of a finding he was an SVP, but were not determinative. (See § 6600, subd. (a)(3).)

without recommitment proceedings. Altering the length of a commitment during its term, and not at its originally scheduled expiration upon a new and current SVP determination, might very well involve an impermissible retroactive application of the amendments. As it is not the situation before us, however, we do not decide that question.

## DISPOSITION

The judgment is affirmed.

Harris, J., and Kane, J., concurred.

On January 17, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 9, 2008, S160661. Baxter, J., did not participate therein.