Filed 12/18/14  P. v. Sanchez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESSE LEON SANCHEZ,<br><br>    Defendant and Appellant. | F066187<br><br>(Super. Ct. No. 08CRSP678793)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Edward Sarkisian, Jr., Judge.

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

In January of 2008, the Fresno County District Attorney's Office filed a petition to commit defendant Jesse Leon Sanchez to a state mental hospital as a sexually violent predator (SVP) pursuant to the provisions of the Sexually Violent Predators Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).  After a jury trial on the issue, the jury found the

allegations in the petition true. The trial court ordered defendant committed the same day to the Department of State Hospitals pursuant to section 6604.

On appeal, defendant contends the trial court erred in failing to instruct the jury with his requested pinpoint instructions. We find no error and affirm.

**FACTS**

Dr. Dawn Starr, a licensed psychologist, testified regarding her extensive experience in evaluating SVP's. Dr. Starr evaluated defendant in June of 2011 and again in August of 2012. Prior to conducting the evaluations, she reviewed various records relating to defendant, including police reports, probation reports, abstracts of judgment, parole revocation reports, criminal history, and other documents relating to his convictions as well as his clinical file from the hospital.

Dr. Starr explained the three criteria governing whether someone qualifies as an SVP. First, whether the person has a qualifying prior conviction, second, whether the person has a diagnosed mental disorder, and third, whether the person presents a substantial, serious, and well-founded risk to reoffend in a sexually violent predatory manner.

Regarding the mental disorder, Dr. Starr diagnosed defendant with pedophilia, sexually attracted to females, nonexclusive type, meaning he is attracted to both children and adults. She additionally diagnosed him with alcohol dependence. The criteria for pedophilia include (1) having sexually arousing fantasies or behavior directed to prepubescent children who are at least five years younger than the offender, (2) acting upon those desires, and (3) having that behavior occur over a six-month period.

In reaching her conclusion, Dr. Starr reviewed incidents occurring in 1985, 1990, and 1993. These incidents each included defendant engaging in sexual behavior with young female children ranging in ages from three to 10 years. According to the reports, defendant rubbed the "crotch" area of his five- to six-year-old niece over her clothing in 1984. The following year, he digitally penetrated her and threatened her. Additionally, he rubbed the "private" area of his 10-year-old niece over her clothing. There was also

2.

an allegation that he had "humped" his three-year-old niece. As a result, he was convicted of three counts of lewd and lascivious behavior with a child under 14 (Pen. Code, § 288, subd. (a)); he was sentenced to eight years in prison in 1986. In discussing these offenses with defendant, he admitted touching his six-year-old niece and stated he had been drinking and did not know why he had done it.

Defendant was paroled in April of 1990 and despite a condition of his parole prohibiting him from being near young children, he moved into the home of his girlfriend's sister where children were present. That same year, defendant was arrested for molesting young children. In one incident he kissed a seven-year-old girl on the mouth and touched her in ways that caused her to feel uncomfortable, including rubbing her inner thighs. The same victim reported she observed defendant putting his tongue inside the mouth of a three-year-old girl. Additionally, he rubbed the leg of a 10-year-old girl while she was asleep. Defendant pled to one count of annoying or molesting a child (§ 647.6) and received a four-year prison term. When Dr. Starr interviewed defendant about these acts, he admitted to kissing one of the children but denied the other offenses.

Defendant was again convicted for incidents occurring in 1993. Defendant's six-year-old granddaughter reported defendant touched her between her legs over her clothing. When she told him to stop, he replied he could not stop. He was ultimately found not guilty of this offense. In another incident, it was reported defendant began kissing a young child and put his tongue in her mouth. When the child got up and went into the bathroom, he followed her, pulled down her underwear, and fondled her vaginal area. He subsequently orally copulated her and digitally penetrated her. He was convicted of two counts of 288, subdivision (a) and two counts of 288, subdivision (b). He was sentenced to a 23-year term. Dr. Starr stated defendant has routinely denied these allegations.

Dr. Starr noted defendant chooses very young victims and engages in similar behavior with them. Due to the fact he reoffends very quickly after being released from custody, Dr. Starr opined defendant was acting upon either an intense urge or fantasy.

3.

That the disorder affects defendant's volitional capacity is evidenced by the fact he continues to engage in the same behaviors even while still on parole. His actions also demonstrate an emotional impairment in that he continues the behavior regardless of the impact it has on his victims. In his interview, defendant denied being sexually attracted to young children.

To determine whether a person presents a substantial risk to reoffend, Dr. Starr relies on actuarial tools. However, in addition to using these tools, the doctor evaluates whether the tools have provided an accurate estimate of a person's risk of reoffense. Defendant's score varied depending on the specific tool used. He scored anywhere from a low to moderate risk to a high risk depending on the specific test she administered.

In evaluating a person's risk of reoffense the doctor considers whether the person is a "substantial or a serious and well-founded risk, more than just a mere possibility." Factors decreasing the risk of reoffense include whether the person has been able to live in the community for a substantial period of time without a sexual offense, advanced age, and participation in sex offender treatment. As applied to defendant, Dr. Starr noted he had always reoffended within one year of his release, thus that mitigating factor did not apply to him. Additionally, although 63 years old, defendant was in good health. Furthermore, defendant was not involved in sex offender treatment. Defendant did participate in programs, such as the Medicine Wheel, however, that group did not address his sexual attraction to female children. Defendant did not participate in the sex offender treatment in the hospital. He participated in some programs at the hospital, he claimed to have some support from members of the community, he mentored other patients, and he performed above average in the institutional setting.

In Dr. Starr's opinion, defendant has a mental disorder affecting his emotional and volitional capacity and that he is a substantial and well-founded risk to reoffend in a sexually violent predatory manner. She opined there was nothing to suggest defendant has understood or dealt with his proclivity to sexually abuse young girls in any way while he has been in custody. Although he has not shown any signs of pedophilia while in

4.

custody, he has not had access to children. Pedophilia is a chronic condition, and although sexual desires may decrease with age, the desires do not disappear.

Dr. Harry Goldberg, a licensed clinical psychologist, has extensive experience in performing SVP evaluations for the State of California. Dr. Goldberg performed an in-person interview with defendant in evaluating whether he qualified as an SVP. The evaluation is a three-part process, composed of determining whether the defendant has committed a sexually violent offense, whether he has a diagnosed mental disorder, and whether he is likely to commit another sexually violent predatory offense.

To determine whether a person has a diagnosed mental disorder, Dr. Goldberg first looks to see if there is a recognizable disorder listed in the Diagnostic and Statistical Manual, Fourth Edition (DSM IV), and second, he determines whether the diagnosis meets certain legal criteria.

Before evaluating defendant, Dr. Goldberg reviewed records, including crime reports, probation reports, court documents, parole documents, and medical, hospital and psychiatric records. After evaluating defendant, Dr. Goldberg diagnosed him with pedophilia, sexually attracted to females, nonexclusive type, as well as alcohol dependence. Pedophilia is defined as recurrent, intense, sexually arousing urges, fantasies, or behaviors toward prepubescent children. It further requires the person to have acted upon the urges and that the urges or fantasies have caused the person distress or difficulties. Additionally, the person must be over 16 years old and at least five years older than the child. Defendant's criminal history demonstrated he engaged in sexual behavior with young children, including oral copulation and fondling. Many of the children were as young as three and six years old and as old as 10. According to the reports, defendant had approximately nine to 10 victims. However, not all the allegations resulted in convictions.

Dr. Goldberg described a pattern of defendant molesting very young children while in consensual adult relationships. In his opinion, the only explanation for defendant's behavior is that he is a pedophile. In his interview, defendant only admitted

5.

to molesting one of his victims. Defendant had been in the community for less than a year each time he reoffended.

In the doctor's opinion, the disorder affects defendant's volitional control. This is evidenced by the fact defendant reoffends so quickly after being placed back into the community. This was true even after serving lengthy sentences, indicating the threat of incarceration is insufficient to control his impulses. During one offense, the victim told him to stop touching her, and he replied he could not stop. This indicated his inability to control his behavior.

The fact defendant had not offended while incarcerated did not affect Dr. Goldberg's opinion as to defendant's ability to control his behavior because pedophilia is a chronic condition. Dr. Goldberg described sexual attractions as "resilient," meaning they are long lasting, regardless of age.

Dr. Goldberg explained that he determines whether someone is likely to reoffend. "Likely" is defined as a "serious and well-founded risk." To make this determination, psychologists primarily rely upon actuarial tools. Dr. Goldberg explained defendant received mixed results when consulting the actuarial tools, ranging from a low to moderate risk to a moderate to high risk of reoffense. The results were mixed primarily due to defendant's age as the various tools adjust for age. Although defendant was 63 years old at the time, Dr. Goldberg noted he had no serious medical conditions and his victims tended to be very young, which made his age less of a factor. Furthermore, defendant's failure to seek any sex offender treatment while in the hospital created a higher risk of reoffense as defendant had not learned the skills necessary to cope with his disorder. Dr. Goldberg acknowledged defendant had addressed his substance abuse problems through programs such as the Medicine Wheel, but had not addressed the source of his sexual abuse problem. The programs he attended did not address the issue related to his offenses.

Furthermore, defendant had not acknowledged his crimes. Even if he were to acknowledge his crimes now, he would still present a substantial and serious risk of

6.

reoffense as acknowledging the problem is only the first step in the process. He still needs to learn the skills to control his pedophilia. That defendant may have been mistakenly released and did not immediately reoffend did not change Dr. Goldberg's opinion. Defendant's release was for a very short period of time and did not provide him enough time to reoffend. Furthermore, defendant's particular pattern is to become involved with someone who has access to young female children, such as grandchildren or nieces. Defendant did not have sufficient time to engage in that pattern. In Dr. Goldberg's opinion, defendant presents a serious risk of reoffense.

The parties stipulated defendant was convicted as follows: (1) three counts of lewd and lascivious behavior with a child under the age of 14 (§ 288, subd. (a)) on May 1, 1986, and served a fixed prison term, and (2) two counts of lewd and lascivious behavior with a child under the age of 14 (§ 288, subd. (a)) as well as two counts of forcible lewd and lascivious behavior with a child under the age of 14 (§ 288, subd. (b)) on May 6, 1994, and served a fixed prison term.

Defendant was called to testify by the People. When asked whether he had committed his prior offenses, defendant repeatedly stated he took "full responsibility." However, defendant would not actually admit to the prior conduct. On several occasions during his testimony he claimed many of the prior incidents were fabricated. He denied being sexually attracted to children.

*Defense Case*

Dr. Carolyn Murphy is a licensed forensic psychologist with substantial experience in evaluating SVP's. She conducted an evaluation of defendant after reviewing the documents related to his criminal cases as well as his medical and psychological records. In addition, she interviewed defendant. After conducting her evaluation, she concluded that although defendant meets the definition of a pedophile, the condition does not affect his ability to control his behavior so as to present a risk to society. In her opinion, defendant's age, as well as his participation in the substance abuse programs, decreased his risk of reoffense. Additionally, she explained defendant's

7.

crimes were opportunistic, which further reduced his risk of reoffense. These combined factors led to her conclusion that defendant was at a decreased risk of reoffense when compared to other sexual offenders.

Dr. Murphy also used actuarial instruments to evaluate defendant's risk of reoffense. After considering defendant's score on these instruments, his age, his participation in treatment, and the nature of his prior offense, Dr. Murphy opined there was not enough evidence to suggest defendant presented a serious and well-founded risk of reoffense.

Dr. Mary Adams is a forensic psychologist with experience in performing SVP evaluations. She evaluated defendant by reviewing legal, law enforcement, and mental health reports, as well as conducting an interview with him. She explained that a person who molests children is not necessarily a pedophile; rather, pedophilia reflects a sexual preference, and in diagnosing the disorder, one looks for information demonstrating the person was motivated by an attraction to children. Simply looking to the number of offenses is insufficient. Dr. Adams noted defendant had never molested a child until the age of 35, which was inconsistent with pedophilia. Furthermore, he did not have a history of possessing child pornography. Moreover, his crimes were opportunistic in nature and were concurrent with drug abuse. Based on these factors, Dr. Adams concluded defendant was not a pedophile.

Additionally, she opined that defendant did not pose a serious or substantial risk of future sexually violent predatory behavior. While she used the same actuarial tools to assess his risk, she disagreed with the People's experts regarding defendant's degree of risk. The disagreement was based upon what group to compare defendant with to determine his risk. Furthermore, his age also reduced his degree of risk.

Dr. Theodore Donaldson, a licensed forensic psychologist with experience in evaluating SVP's also evaluated defendant. According to Dr. Donaldson, for a person to qualify as having a diagnosed mental disorder, the person must (1) suffer from a condition that predisposes him to sexual violence and (2) have a serious difficulty in

8.

controlling his sexually dangerous behavior. As to the first prong, Dr. Donaldson opined defendant could not be diagnosed with pedophilia. This was due, in part, to his belief that the diagnosis of pedophilia as defined in the DSM-IV had never been field tested. Additionally, the criteria listed for the disorder in the DSM-IV are vague. Furthermore, he found insufficient evidence defendant had the disorder. He noted defendant did not exhibit symptoms for 35 years, which he considered unusual as symptoms would be expected much earlier. Furthermore, he did not see a pattern of fixation on children. Defendant did not have a history of seeking out children; rather, they were primarily children present in the home. Thus, his crimes appeared opportunistic. Additionally, defendant had not, since his commitment in 1993, exhibited any signs of the disorder such as attempting to collect child pornography or other pictures of children. Nor did Dr. Donaldson find any evidence that defendant tried to control this behavior, primarily because defendant denied the offenses. Consequently, there was insufficient information to support a diagnosis of pedophilia.

As to the question of whether defendant presented a serious risk of reoffense, Dr. Donaldson stated the actuarial tools used for that prediction are not sufficiently accurate to inspire confidence in their predictions. Even considering the actuarial tools, defendant presented a low risk of reoffense. The fact defendant had not participated in sex offender treatment was insignificant to Dr. Donaldson as such treatment does not affect recidivism rates. In his opinion, defendant did not suffer from a mental disorder, he did not currently have any symptoms of a disorder, and he presented a low risk of engaging in sexually violent predatory behavior in the future.

The defense presented evidence that defendant had been accidentally released several years earlier, but did not attempt to flee. He had been released for only a few hours before being returned to custody. The defense also presented several witnesses who testified defendant had good behavior in the hospital and was an active participant and a mentor in the Medicine Wheel program. The Medicine Wheel was described as a 12-step program centered upon self-awareness.

DISCUSSION

Prior to trial, defendant requested the trial court instruct the jury with several pinpoint instructions. The trial court determined the instructions were not required and denied the request. Defendant contends the trial court erred in failing to instruct the jury with his requested pinpoint instructions. We find no error.

The SVPA defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) "Likely" in this context means the person presents "a substantial danger, that is, a serious and well-founded risk, of committing such crimes if released from custody." (*People v. Roberge* (2003) 29 Cal.4th 979, 988, italics omitted.) A diagnosed mental disorder "includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) A finding the person is dangerously disordered is not enough; there must also be "a volitional impairment rendering [the person] dangerous beyond [his or her] control." (*Kansas v. Hendricks* (1997) 521 U.S. 346, 358; see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1157-1158.) In other words, there must be proof the person has "serious difficulty in controlling" his or her dangerous behavior. (*Kansas v. Crane* (2002) 534 U.S. 407, 413; accord, *People v. Williams* (2003) 31 Cal.4th 757, 759 (*Williams*).)

Pursuant to CALCRIM No. 3454, the trial court instructed the jury, in pertinent part:

> "The petition alleges that [defendant] is a sexually violent predator.

> "To prove this allegation, the People must prove beyond a reasonable doubt that:

> "1. He has been convicted of committing sexually violent offenses against one or more victims;

10.

"2. He has a diagnosed mental disorder;

"3. As a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior.

"AND

"4. It is necessary to keep him in custody in a secure facility to ensure the health and safety of others.

"The term diagnosed mental disorder includes conditions either existing at birth or acquired after birth that affect a person's ability to control emotions and behavior and predispose that person to commit criminal sexual acts to an extent that makes him or her a menace to the health and safety of others.

"A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger, that is, a serious and well-founded risk that the person will engage in such conduct if released in the community. The likelihood that the person will engage in such conduct does not have to be greater than 50 percent."

Defendant does not claim the trial court erred in giving CALCRIM No. 3454. Rather, he contends the trial court prejudicially erred by refusing to instruct the jury with his requested supplemental definitions of "a diagnosed mental disorder" and "likely."

"SVP trials are '"special proceedings of a civil nature,"' wholly unrelated to any criminal case. [Citation.]" (*Moore v. Superior Court* (2010) 50 Cal.4th 802, 815.) Because civil commitment involves a significant deprivation of liberty, however, a defendant in an SVP proceeding is entitled to certain due process protections, albeit not the entire range of criminal procedural protections. (*Id*. at pp. 818-819; *People v. Carroll* (2007) 158 Cal.App.4th 503, 511.) We need not determine whether penal or civil statutes relating to jury instructions control; under either, any party may ask the trial court to give the jury special instructions concerning points of law. (Code Civ. Proc., § 609; Pen. Code, §§ 1093, subd. (f), 1127.) Likewise, we need not decide whether defendant's requested instructions constituted mere amplifications or clarifications (see, e.g., *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1192) or true pinpoint instructions, i.e., instructions

11.

pinpointing the theory of the defense case (see, e.g., *People v. Bolden* (2002) 29 Cal.4th 515, 558; *People v. Wright* (1988) 45 Cal.3d 1126, 1137). A trial court may refuse any proffered instruction if it incorrectly states the law, is argumentative, or merely duplicates other instructions. (*People v. Bolden*, *supra*, at p. 558; *People v. Gurule* (2002) 28 Cal.4th 557, 659; *Ideal Heating Corp. v. Royal Indem. Co.* (1951) 107 Cal.App.2d 662, 668.)

During in limine motions, defendant asked the trial court to supplement the definition of "diagnosed mental disorder" contained in CALCRIM No. 3454 with a statement requiring that the diagnosed mental disorder causes defendant serious difficulty controlling dangerous sexual behavior. Defendant argued such an instruction was necessary as the United States Supreme Court has held that a person cannot be civilly committed under a statute, such as the SVPA, without proof of a serious difficulty in controlling behavior. (*Kansas v. Crane*, *supra*, 534 U.S. at p. 413.) After deferring the ruling until the conclusion of the evidence, the trial court determined CALCRIM No. 3454 adequately defined the term and denied the request for additional instructions. We find no error.

In *Williams*, *supra*, 31 Cal.4th 757, the California Supreme Court acknowledged the SVPA does not use the precise language of *Kansas v. Crane*, *supra*, 534 U.S. at page 413, which prohibits involuntary confinement of persons on the basis they are dangerously disordered "without 'proof [that they have] serious difficulty in controlling [their dangerous] behavior.' [Citation.]" (*Williams*, *supra*, at p. 759.) The state high court concluded, however, that, read together, the language of section 6600, subdivisions (a)(1) and (c) "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal sexual behavior." (*Williams*, *supra*, at p. 759.) The court stated: "We are persuaded that a jury instructed in the language of California's statute must necessarily understand the need for serious difficulty in controlling behavior." (*Id*. at p. 774.) Thus, "a commitment rendered under the plain language of the SVPA necessarily encompasses a determination

12.

of serious difficulty in controlling one's criminal sexual violence, as required by *Kansas v. Crane*, *supra*, 534 U.S. 407. Accordingly, separate instructions or findings on that issue are not constitutionally required, and no error arose from the court's failure to give such instructions in defendant's trial." (*Williams*, *supra*, at p. 777, fns. omitted.)

*Williams* is dispositive of defendant's claim. (*People v. Paniagua* (2012) 209 Cal.App.4th 499, 526-528.) Although defendant's requested instruction correctly stated the law, the principle it conveyed was duplicative of CALCRIM No. 3454. (*Williams*, *supra*, 31 Cal.4th at p. 759.) Accordingly, it was properly refused. (*Id*. at p. 777; see *People v. Gurule*, *supra*, 28 Cal.4th at p. 660.)

Defendant also asked the trial court to supplement CALCRIM No. 3454's definition of "likely." Specifically, he requested an instruction informing the jury the term "likely" "requires much more than the mere *possibility*." The court saw no basis for making the requested modification. Again, we conclude the court did not err.

In *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 922, the California Supreme Court concluded "the phrase '*likely* to engage in acts of sexual violence' (italics added), as used in section 6601, subdivision (d) [concerning the initial screening stage of the SVPA process], connotes much more than the mere *possibility* that the person will reoffend as a result of a predisposing mental disorder that seriously impairs volitional control. On the other hand, the statute does not require a precise determination that the chance of reoffense is *better than even*. Instead, an evaluator applying this standard must conclude that the person is 'likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community."

In *People v. Roberge*, *supra*, 29 Cal.4th at page 987, the California Supreme Court concluded "the phrase 'likely [to] engage in sexually violent behavior' in section 6600, subdivision (a), should be given the same meaning" *Ghilotti* ascribed to the phrase for purposes of section 6601, subdivision (d). Accordingly, "under section 6600, subdivision

13.

(a), which is at issue here, a person is 'likely [to] engage in sexually violent criminal behavior' if at trial the person is found to present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such crimes if released from custody." (*Roberge*, *supra*, at p. 988.) The high court further held trial courts have a sua sponte duty to so define the term for jurors. (*Id*. at pp. 988-989.)

CALCRIM No. 3454 contains the requisite definition of "likely." "It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions. [Citation.]" (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.) Considered together, the words "likely," "substantial," "serious," and "well-founded" reasonably conveyed to the jury that the term "likely" required "much more than a mere possibility."

The record does not indicate any confusion on the part of the jury and contains no requests for further guidance on either point. (See *People v. Gonzales*, *supra*, 51 Cal.4th at p. 940; see also *People v. Hughes* (2002) 27 Cal.4th 287, 379.) Moreover, the prosecutor emphasized the risk of reoffense had to be "substantial, serious, and … well-founded .…" Although he clarified it did not have to be 50 percent, he repeatedly explained the risk had to be serious and well-founded, making clear it had to be much more than a mere possibility. Furthermore, the prosecutor explained that before the jurors could find the allegations true, they had to determine defendant has "serious difficulty controlling his dangerous criminal behavior because of his pedophilia." Also, Dr. Starr testified the term "likely" "is defined as … more than just a mere possibility." Taking into account the instructions as a whole, the evidence, and counsel's arguments, we conclude there was no reasonable likelihood the jury was misled concerning the governing law, despite the omission of the requested instructions. (See *People v. Tate* (2010) 49 Cal.4th 635, 696; *People v. Young* (2005) 34 Cal.4th 1149, 1202.) Accordingly, there was no error.

Were we to conclude the trial court should have given one or both of the requested instructions, however, we would find the error harmless for the same reasons. The

14.

substance of the refused instructions was conveyed through the instructions that were given; no essential element of, or defense to, an SVP finding was removed from the jury's consideration, and the jury was not misled; counsel conveyed the substance of the refused instructions in their arguments.  Under the circumstances, and in light of the evidence, it is not reasonably probable defendant would have obtained a more favorable result had either or both of the requested instructions been given.  (See *People v. Kraft* (2000) 23 Cal.4th 978, 1066; *People v. Tapia* (1994) 25 Cal.App.4th 984, 1028; *People v. Mai* (1994) 22 Cal.App.4th 117, 126, disapproved on another ground in *People v. Nguyen* (2000) 24 Cal.4th 756, 758, 761.)

## DISPOSITION

The judgment (order of commitment) is affirmed.


_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.