Filed 7/28/16  P. v. Thompson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064726 |
| v. | (Super.Ct.No. FELRS1502148) |
| JAMIE DAVID THOMPSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Law Office of C. Matthew Missakian and Matthew Missakian, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Jamie David Thompson appeals from the trial court's denial of his petition for a certificate of rehabilitation pursuant to Penal Code sections 4852.01 et seq.[1]  We find no error and affirm.[2]

I

STATEMENT OF FACTS

Defendant was convicted in 1999 of indecent exposure and annoying or molesting a child.  (§§ 314.1, 647.6.)  In June 2015 he filed a petition for certificate of rehabilitation in which he alleged that he had successfully completed probation in 2002 and had obtained relief under section 1203.4.[3]  The petition included the form declaration that "During the period of my rehabilitation, I have lived an honest and upright life, conducted myself with sobriety and industry, and exhibited good moral character.  I have conformed to and obeyed all the laws of the land."  This assertion was supported by character references from several friends and relatives.

At the hearing on October 1, 2015, there was what the court described as "an extensive bench conference" off the record.  After defense counsel presented argument,

---

[1]  All subsequent statutory references are to the Penal Code unless otherwise specified.

[2]  Once issued, the certificate operates as an application for a full pardon from the Governor, who may grant the pardon without additional investigation.  (§ 4852.16.)

[3]  That statute allows a defendant who has successfully completed probation either to withdraw a plea of guilty or to have the verdict of guilty set aside.  The defendant is subsequently "released from all penalties and disabilities resulting from the offense of which he or she has been convicted," with exceptions.  (§ 1203.4, subd. (a)(1).)

the prosecutor began by referring to "the Riverside incident," evidently that reflected an incident report which is part of the record.

This report reflected that on August 1, 2014, a woman contacted police regarding a hit-and-run incident in which defendant was the other driver. The woman told police that defendant first cut her off. When she honked her horn at him, defendant gave her the middle finger. He then slammed on his brakes so that she nearly rear-ended his vehicle. When defendant slammed on his brakes a second time, coming to a complete stop, the woman drove around him. However, when she stopped at a stop sign, he rear-ended her vehicle. When both drivers pulled over, defendant walked up to the woman's vehicle and began yelling and using profanity. He attempted to open the door of her vehicle, but it was locked, and he then punched the driver's side rear view mirror and drove away.

According to defendant, contacted later, it was the woman who began the situation by attempting to pass unsafely, and then braked abruptly so that he could not avoid her vehicle. He also told police that when he got out of his car, she drove towards him, striking him on the buttocks. He admitted striking the rear view mirror of the woman's car, but said that he raised his hand to protect himself as she drove towards him.

The woman's version was corroborated to some extent by the report of a witness who saw defendant approach her vehicle on foot, yelling, and strike the vehicle's mirror. This witness indicated that the woman's vehicle did not move during this time.

The matter was not accepted for prosecution by the district attorney. Counsel for defendant argued that the court should defer to this decision and give little weight to the

3

woman's version of the incident. However, the trial court found that defendant's conduct—both in leaving the scene and his threatening behavior—disqualified him from relief.

II

DISCUSSION

Section 4852.01 allows a person convicted of a felony or a registerable sex offense (§ 290) to ask for a certificate of rehabilitation once the conviction has been expunged pursuant to section 1203.4. The defendant seeking relief must show at least five years of good behavior (§ 4852.03, subd. (a)) and, in the case of one convicted of most registerable sex offenses, 10 years. (§ 4852.03, subd. (a)(2).)[4]

Section 4852.1, subdivision (a)(5), allows the court to consider whatever testimony it deems necessary, and to require the production of specified police and penological records concerning the defendant, including "written reports or records of any other law enforcement agency concerning the conduct of the petitioner since the petitioner's release on probation . . . ." If the court finds that the petitioner has violated any law, it may deny the petition. (§ 4852.11.) More generally, section 4852.12 allows the court to consider "the conduct of the petitioner during the period of rehabilitation . . . and any other information the court deems necessary in making its

---

[4] The exceptions are statutes relating to child pornography (e.g., § 311.2, subds. (b), (c), and (d)) and indecent exposure. (§ 314.) However, annoying or molesting a child under section 647.6 is not exempted from the additional five-year requirement.

4

determination." (§ 4852.12, subd. (a).)  The court may then make an order of rehabilitation if it "finds that the petitioner has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship." (§ 4852.13, subd. (a).)

The decision whether to grant a petition for a certificate of rehabilitation rests within the sound discretion of the trial court, and will not be reversed except in cases of clear abuse of that discretion. (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1519.) The standards for determining whether rehabilitation has been achieved are high. (*People v. Ansell* (2001) 25 Cal.4th 868, 887.)

Defendant argues that the trial court improperly relied upon the fact that he had supposedly violated a law.  He points out that there is some evidence in the police report that he did, in fact, report to police by telephone concerning the incident, although certainly not immediately.  However, as the People point out, this did not satisfy defendant's legal obligations under Vehicle Code section 20002, subdivision (a).  That statute requires a driver who is involved in an accident involving damage to a vehicle[5] to *either* exchange identification and registration information with the other driver, *or*, if the driver cannot be located, leave identification information on the damaged vehicle and report the accident to police. (Veh. Code, § 20002, subd. (a)(1) & (2).)  Defendant did

---

[5]  The police report indicates that the woman's vehicle had "minor damage to the rear bumper."

5

neither; rather, after confronting the woman, he drove off without exchanging information. Although he eventually called police, he nevertheless violated the statute.[6]

And although defendant asserts that the trial court's "primary" basis for denying the certificate of rehabilitation was the violation of law, the court also expressly relied upon defendant's overall conduct during the incident. After stressing that whatever the facts of the incident, defendant left the scene and "had to be contacted by law enforcement . . . in another county," it noted "my gut is telling me that your client does not deserve relief because of this incident. It does not exhibit good character. This is versus a woman. The woman is in her car. An independent witness puts the woman in her car where your client is yelling at her . . . . Not good character."

Defendant criticizes the trial court for taking a negative view of the incident and presents his behavior in a favorable, self-exculpatory light, arguing that the woman really did strike him with her car and that his failure to stay around and exchange information was justified. The trial court was not compelled to read the police report in this rosy manner, especially when its more negative view was supported by the independent witness.

Defendant also asserts that his decision to leave the scene was not only justifiable, but praiseworthy as it prevented a volatile situation from becoming worse. But this again

---

[6] Defendant asserts that he called police "while the incident was taking place" and told them that he had " 'just' " been struck by the woman's vehicle. This mischaracterizes the information in the report, which also reflects that defendant told police that the woman pursued him for several minutes and that he was "unable" to report the incident until he reached San Diego County.

depends on his position that the woman was enraged and unstable. The trial court reasonably concluded from the police report that whatever the parties' shared feelings may have been, it was defendant who threatened to escalate the situation by physically challenging and verbally assaulting her. Nor was his "not good" conduct limited to "yell[ing] at a woman," as he characterizes it. He also attempted to open the woman's car door and, when he could not do so, struck and broke the car mirror. Defendant was apparently out of control. Although we agree that it may have been for the best that he left the scene, we do not infer that his motive in doing so was necessarily pacific.

In his reply brief, defendant points out that the trial court initially failed to recognize that he did contact law enforcement, but the court conceded its error. He then argues that the trial court erroneously commented that he had to be " 'tracked down' " by law enforcement, even though he had voluntarily called in to report the incident. In our view this comment simply reflects that defendant did not, as required by law, immediately provide the required information at the scene.

Defendant's final argument is that the trial court should not have denied the certificate of rehabilitation based upon "an old police report."[7] The statutes (e.g., § 4852.1) clearly contemplate the receipt of documentary evidence containing hearsay and no objection was made below. (See *People v. Lockwood* (1998) 66 Cal.App.4th 222, 228 [court based denial on the negative comments made by defendant's neighbor on a

---

[7] He also describes the report as relating to conduct occurring "two years prior," although the incident occurred on August 1, 2014, and the hearing took place on October 1, 2015—14 months later.

questionnaire sent out by the district attorney].)  We also note two further points in this respect:  first, that defendant relies upon the same report to support his own version of the event, and second, that he did not take advantage of the opportunity to testify at the hearing.

As we have also set out above, once the trial court finds credible evidence that supports a conclusion that the petitioning defendant's character does not justify relief, the decision must be upheld.  (*People v. Lockwood*, *supra*, 66 Cal.App.4th at p. 227.)  There was such evidence in this case.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
                                                    Acting P. J.

We concur:


MILLER_____
                    J.


CODRINGTON_____
                    J.


8